IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07cv01347-RPM-MJW

Neal Beidleman,

    Plaintiff,

v.

Random House, Inc.

    Defendant

---

ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

Neal Beidleman ("Beidleman" or "the Plaintiff") filed this civil action against Random House, Inc. ("Random House or "the Defendant") on June 27, 2007, alleging one claim of copyright infringement and one claim of fraudulent concealment. The Defendant moved for summary judgment of dismissal on January 17, 2008 [Doc. 16].

For purposes of this motion, the following facts are assumed to be supported by competent evidence:

In May 1996, Beidleman served as a guide for an expedition on Mt. Everest. Eight climbers, including two of the leaders, died during that expedition. Numerous books and magazine articles have been written about the ill-fated expedition.

Beidleman took photographs, which he registered with the U.S. Copyright Office. He retained a New York agency, Woodfin Camp & Associates, as his agent for licensing his Everest photographs. Woodfin Camp III ("Camp") operates that small agency and has approximately 43

years of extensive experience licensing photographs to major publishing companies such as Random House, Houghton Mifflin, Harcourt, Simon & Schuster, and others.

In 1997, Random House (under its imprint Villard Books)[1] published a book entitled *Into Thin Air: A Personal Account of the Mount Everest Disaster*, by Jon Krakauer. *Into Thin Air* became a #1 New York Times bestseller and was honored as "Book of the Year" by Time Magazine. *Into Thin Air* was a finalist for a 1997 National Book Critics Circle Award and was one of three finalists for the 1998 Pulitzer Prize in General Non-fiction.

In 1998, Random House decided to publish an illustrated edition of *Into Thin Air*. In a letter to Camp dated August 7, 1998, a Random House editor identified the Beidleman photographs that Random House wanted to use in that publication and stated as follows:

> *Into Thin Air: The Illustrated Edition* will be printed in a modest run of 25,000 copies (a reprint would be very expensive and fairly unlikely) and will retail at $40. It will be a 8 7/8 x 8 7/8 hardcover of approximately 400 pages. We are gathering what we hope will be about 300 images for this book, so our art budget is fairly modest. I hope we can come to an agreement that will be amenable to all parties concerned.

Camp agreed and on November 20, 1998, sent an invoice to Random House as follows:

> One Time Non-Exclusive Reproduction Rights
>
> Fee for the one time non exclusive license to reproduce the following photographs in the first U.S. language edition only of INTO THIN AIR Illustrated Edition 1998 by Jon Krakauer, print run 25,000 copies.

Ex. B to Am. Compl. The invoice itemized the photos and stated the total amount due.

Random House published *Into Thin Air: The Illustrated Edition* in November 1998, printing 85,642 copies of the book.

---

[1]References to "Random House" include Villard Books.

On or about February 8, 1999, Random House paid the invoice sent to it by Woodfin Camp & Associates.

In early 2006, Beidleman retained counsel to pursue an unrelated copyright infringement action against another publisher for exceeding a limited license for one of his Everest photographs. This experience caused Beidleman to question whether Random House had complied with its license for his Everest photos. Beidleman hired Michael Harmon to investigate Random House's use of Beidleman's photos.

On August 14, 2006, Harmon called Random House and left a voice mail explaining that he was auditing the use of Beidleman's photographs in *Into Thin Air: The Illustrated Edition*. That call was returned two days later by Random House employee Deb Foley who told Harmon that he should contact Adam Korn, another Random House employee. Foley provided Korn's telephone number and email address to Harmon. Harmon left a voice mail for Korn on August 21, 2006. Korn did not respond. Harmon followed up with emails to Korn on September 15, 2006, and November 27, 2006. Korn did not respond. When Harmon sent another email on January 8, 2007, he received a notice that the delivery had failed. Harmon then called Foley, who told him that Korn had left his employment at Random House "a few months ago" and that Harmon should contact Ryan Doherty.

Harmon emailed Doherty on January 17, 2007, asking for the "total number of copies you have made for all purposes" of Beidleman's photographs. Doherty responded on January 22, 2007, stating that Random House had sold 62,147 copies of *Into Thin Air: The Illustrated Edition*. Harmon sent another email, explaining that the information he was seeking was the total number of books printed and the total number of times that Random House had used the

photographic images in any manner.  On February 14, 2007, Doherty responded, stating that the total print number was 85,642.

The Plaintiff filed this suit on June 27, 2007.

The Defendant argues that the plaintiff's claim of copyright infringement is barred by the statute of limitations.  The Copyright Act provides, "No civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued."  17 U.S.C. § 507(b).

The Copyright Act does not address when a claim accrues.  Under the "discovery rule," a claim for copyright infringement accrues when the plaintiff "knows or has sufficient reason to know of the conduct upon which the claim is grounded."  *Warren Freedenfeld Assocs. v. McTigue,* 531 F.3d 38, 44 (1st Cir. 2008).  Some courts have applied the "injury rule," holding that a claim for copyright infringement accrues when the injury occurred.  *See Auscape Int'l v. Nat'l Geographic Soc'y,* 409 F.Supp.2d 235, 244-48 (S.D.N.Y. 2004).

Advocating application of the injury rule, the Defendant contends that the Plaintiff's claim accrued no later than April 2002 – the date by which *Into Thin Air: The Illustrated Edition* was out of print.  In response, the Plaintiff argues that the discovery rule governs accrual, asserting that his claim did not accrue until January 2007, when he actually learned that Random House had exceeded the license.

The United States Supreme Court has not addressed whether the determination of accrual of a copyright claim is governed by the discovery rule or the injury rule.  The United States Courts of Appeals for the First, Fourth, Sixth, Eighth, and Ninth Circuits have applied the discovery rule to claims of copyright infringement.  *See Warren Freedenfeld Assocs.,* 531 F.3d at

44-46; *Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*, 477 F.3d 383, 390 (6th Cir. 2007); *Gaimon v. McFarlane*, 360 F.3d 644, 653 (8th Cir. 2004); *Lyons P'ship v. Morris Costumes, Inc.*, 243 F.3d 789, 796 (4th Cir. 2001); *Roley v. New World Pictures, Ltd.*, 19 F.3d 479, 481 (9th Cir. 1994); *see also Calhoun v. Lillenas Publ'g*, 298 F.3d 1228, 1236 (11th Cir. 2002) (Birch, J., specially concurring) ("The limitations period may be triggered when a plaintiff knows or, in the exercise of reasonable diligence, should have known of the infringement."). The United States Court of Appeals for the Tenth Circuit has not ruled on the issue. No circuit court has adopted the injury rule as the standard for determining accrual of a copyright claim.

The text of the Copyright Act does not compel application of the injury rule. Determination of accrual in this case will be governed by the discovery rule. The discovery rule "reflects a sensible tradeoff – a policy decision that balances the important interests of repose against the substantial hardship that an inflexible statute of limitations might otherwise foster." *Warren Freedenfeld Associates*, 531 F.3d at 46.

The Defendant contends that even if the discovery rule applies, the Plaintiff's claim is still untimely, arguing that the undisputed facts show that Plaintiff could have discovered the alleged infringement at any time by simply inquiring.

Determination of the accrual date according to the discovery rule requires consideration of "when a reasonably prudent person in the plaintiff's shoes would have discovered (that is, would have acquired an awareness of) the putative infringement." *Warren Freedenfeld Associates*, 531 F.3d at 44. The Defendant bears the burden of proof on the question of when a reasonably prudent person would have discovered the alleged infringement. This a fact-intensive inquiry, not appropriate for determination on the Defendant's motion for summary

judgment. The amount of damages recoverable for the alleged infringement, if any, is also a matter to be determined at trial.

The Defendant argues that the Plaintiff's second claim for relief, for fraudulent concealment, is preempted. The Copyright Act provides:

> On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by Section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

17 U.S.C. § 301(a). "Under section 301, a state common law or statutory claim is preempted if: (1) the work is within the scope of the 'subject matter of copyright' as specified in 17 U.S.C. §§ 102, 103; and (2) the rights granted under state law are equivalent to any exclusive rights within the scope of federal copyright as set out in 17 U.S.C. § 106." *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 9 F.3d 823, 847 (10th Cir.1993) (quotations and citations omitted).

There is no dispute that works at issue (Beidleman's photographs) are within the scope of the subject matter of copyright. The second part of the preemption test is the focus of this dispute.

Section 106 of the Copyright Act grants to the copyright owner the exclusive rights to: (i) reproduce the copyrighted work; (ii) prepare derivative works based on the copyrighted work; (iii) distribute copies of the copyrighted work; (iv) perform the copyrighted work publicly; and (v) display the copyrighted work publicly. Preemption analysis requires comparison of the exclusive rights protected by 17 U.S.C. § 106 to the elements of the asserted state claim. *Gates Rubber Co.,* 9 F.3d at 847. Factual overlap between the federal copyright claim and the state law

claim is not dispositive. The label the plaintiff puts on the state law claim is not dispositive either. The court must examine the nature of the particular state law claim alleged to determine whether it is qualitatively different from the claim of copyright infringement. "[I]f a state cause of action requires an extra element, beyond mere copying, preparation of derivative works, performance, distribution or display, then the state cause of action is qualitatively different from, and not subsumed within, a copyright infringement claim and federal law will not preempt the state action. *Id.*, 9 F.3d at 847 (quotations and citations omitted).

The remedy sought by the plaintiff is relevant to this determination. In *Ehat v. Tanner*, the United States Court of Appeals for the Tenth Circuit held that the plaintiff's state law claim of misappropriation of property was preempted and explained, "[The plaintiff] did not allege a state law claim of conversion to recover for the physical deprivation of his notes. Instead, he sought to recover for damage flowing from their reproduction and distribution. . . . Such reproduction interferes with an intangible literary or artistic property right equivalent to copyright." *Ehat v. Tanner*, 780 F.2d 876, 878 (10th Cir. 1985)(citations omitted).

The fraudulent concealment claim as alleged by Beidleman includes more than the copyright infringement remedy. He contends that the license fee charged for 25,000 copies was less than what Camp would have sought for the larger printing and that Random House fraudulently concealed its intention to print 85,642 copies of the book. The August 7, 1998 letter is claimed to be a misrepresentation of intention which Camp relied on in granting permission for a limited use of the photographs at the price charged. The damages for that asserted fraud are different under common law than those available under the Copyright Act. There is no preemption of the second claim for relief.

Based on the foregoing, it

ORDERED that the Defendant's motion for summary judgment is denied, and it is

FURTHER ORDERED that the Plaintiff's Motion for Oral Argument [Doc. 28] is denied.

Dated: December 22, 2008

BY THE COURT:

s/ Richard P. Matsch
_____
Richard P. Matsch, Senior District Judge