IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action No. 07cv01347-RPM-MJW

Jeannie Price and
Colin Monteath,

       Plaintiffs,

v.

Random House, Inc.,
R.R. Donnelley & Sons Company,
Berryville Graphics, Inc.
Offset Paperback Mfrs., Inc.,

       Defendants

---

ORDER DENYING PLAINTIFFS' MOTION TO STAY AND COMPEL ARBITRATION

---

       This action was commenced by on June 27, 2007, by Neal Beidleman. On August 4, 2009, Plaintiffs Jeannie Price and Colin Monteath moved pursuant to 9 U.S.C. §§ 2, 3 & 4, seeking an order referring their claims against Random House to arbitration and staying further proceedings in this action. The procedural history of this action demonstrates that the Plaintiffs have waived the right to arbitrate by their litigation conduct. In addition, the Plaintiffs have failed to establish the existence of an agreement to arbitrate.

       This copyright infringement action involves photographs taken during a May 1996 expedition on Mt. Everest. Eight people, including two of the leaders, died during that expedition. The expedition has been the subject of books and magazine articles.

Neal Beidleman ("Beidleman"), Thomas Kelly ("Kelly"), Caroline Mackenzie ("Mackenzie") and Scott Fischer ("Fischer"), members of the expedition, took photographs during the journey. Fischer died during the expedition. Jeannie Price ("Price") is his surviving spouse and heir.

Beidleman, Kelly, Mackenzie and Price engaged Woodfin Camp & Associates ("WC&A"), a New York firm, to act as their licensing agent for the photographs.[1] The photographs that are the subject of this action were registered with the United States Copyright Office.

In 1997, Random House, Inc. ("Random House") under its imprint Villard Books, published a book entitled *Into Thin Air: A Personal Account of the Mount Everest Disaster*, by Jon Krakauer. *Into Thin Air* became a #1 New York Times bestseller. Random House published several editions of *Into Thin Air*. Some editions included photographs. Random House obtained licenses from WC&A to use photographs taken by Beidleman, Kelly, Mackenzie and Fischer.

In 2006, Beidleman became concerned that Random House's use of his Everest photographs might have exceeded its license. Beidleman retained counsel and began investigating potential claims against Random House.

In April 2007, Beidleman's counsel (Christopher Seidman) asked Random House's counsel (Laura Goldin) whether Villard had received a delivery memo from WC&A, along with photographs that WC&A had submitted for review. (Ex. E to Pls.' Reply Br.; Ex. L to Defs.' Resp.) Beidleman's counsel knew in April 2007 that WC&A's standard delivery memo

---

[1] WC&A's relationship with Mackenzie was a subagency, with Hedgehog House of New Zealand as the primary agent for Mackenzie. ( Ex. F to Pls.' Mot., Camp decl. at ¶ 3.)

contained an arbitration clause. (*Id.*) WC&A searched its business records but did not find a delivery memo addressed to Random House. Woodfin Camp, the owner of WC&A, wrote a declaration saying that he does not recall sending delivery memoranda to Random House, but that would have been his usual practice. (Ex. F to Pls.' Mot.)

Plaintiffs' counsel states, in a declaration dated September 22, 2009, that during these pre-filing communications in April 2007, Random House's counsel denied that Random House had received a delivery memo from WC&A. (Ex. E to Pls.' Reply.)

On June 27, 2007, Beidleman commenced this action, alleging that in 1998, WC&A had sold Random House a limited license to copy and print 25,000 copies of 32 Beidleman photographs in the Illustrated Edition of *Into Thin Air* ("The Illustrated Edition"). Beidleman alleged that Random House printed more than 25,000 copies of the Illustrated Edition without disclosing that it had exceeded the limit of the license. In his First Amended Complaint, filed July 13, 2007, Beidleman alleged two claims against Random House: (1) copyright infringement and (2) fraudulent concealment.[2]

Random House answered on September 10, 2007, and denied liability. A scheduling conference was held on November 16, 2007. No scheduling order was entered at that time.

In January 2008, Random House moved for summary judgment, arguing that the Plaintiff's fraudulent concealment claim was preempted and the copyright claim was untimely. The court denied Random House's motion for summary judgment. A scheduling conference was set for March 19, 2009.

---

[2]The original Complaint named Villard Books as the Defendant. The First Amended Complaint substituted Random House as the Defendant.

On March 5, 2009, Beidleman filed an unopposed motion for leave to file a Second Amended Complaint, adding added claims of copyright infringement of 29 photographs taken by Kelly, Mackenzie, and Fischer. Beidleman asserted those claims in his own name, alleging that Kelly, Mackenzie and Price had assigned their interests in those photographs to Beidleman. The Second Amended Complaint also added claims against R.R. Donnelley & Sons ("Donnelley"), the printer of The Illustrated Edition. The Second Amended Complaint alleged three claims for relief: (1) copyright infringement against Random House based on its allegedly unlawful use of 61 photographs in The Illustrated Edition of *Into Thin Air*; (2) fraudulent concealment against Random House; and (3) copyright infringement against Donnelley based on its printing of The Illustrated Edition. By order dated March 13, 2009, the Second Amended Complaint was accepted and filed. (Dkts. 38 & 39).

A scheduling conference was held on March 19, 2009, and a scheduling order was entered on that date. Random House and Donnelley answered the Second Amended Complaint. Discovery commenced.

On March 27, 2009, Beidleman served a First Set of Document Requests to Random House, asking for production of all "stock photo delivery memoranda" sent by WC&A to Random House. (Ex. A to Pls.' Mot.) Random House objected to the scope of that request and refused to produce any documents unrelated to The Illustrated Edition of *Into Thin Air*. (Ex. B to Pls.' Mot.)

On May 20, 2009, Beidleman filed an unopposed motion for leave to file a Third Amended Complaint to add claims relating to a 1997 hardcover edition of *Into Thin Air*, a 1998 paperback edition of *Into Thin Air*, and a book entitled *Leading Up* by Michael Useem,

published in 2001.  The Third Amended Complaint concerned the same 61 photographs and alleged six claims for relief:  (1) copyright infringement against Random House based on its allegedly unlawful use of the photographs in the hardcover edition of *Into Thin Air*; (2) copyright infringement against Random House based on its allegedly unlawful use of the photographs in the paperback edition of *Into Thin Air*; (3) copyright infringement against Random House based on its allegedly unlawful use of the photographs in The Illustrated Edition of *Into Thin Air*; (4) copyright infringement against Random House based on its allegedly unlawful use of photographs in *Leading Up*; (5) fraudulent concealment against Random House relating to its publication of The Illustrated Edition of *Into Thin Air*, and (6) copyright infringement against Donnelley based on its printing of The Illustrated Edition.  By order dated May 21, 2009, the Third Amended Complaint was accepted and filed.  (Dkts. 55 & 56.)

On May 22, 2009, Beidleman served a second set of document requests, again requesting production of "stock photo delivery memoranda" sent by WC&A to Random House.  (Ex. C to Pls.' Mot.)

On July 15, 2009, Beidleman and the Defendants stipulated to the dismissal of the third, fourth, fifth and sixth claims for relief in the Third Amended Complaint, stating that they had resolved all claims concerning publication of photographs in *Leading Up* and The Illustrated Edition of *Into Thin Air*.  (Dkt. 63.)

On July 17, 2009, Random House responded to the Plaintiff's second set of document requests and produced documents relating to the hardcover and paperback editions of *Into Thin Air*.  The documents produced by Random House included two WC&A Delivery Memos, dated November 18, 1996 and January 22, 1997.  (Ex. E to Pls.' Mot.)  On July 18, 2009, Beidleman's

counsel noticed that the documents recently produced by Random House included WC&A delivery memoranda containing an arbitration clause.

Each Delivery Memo is a one page document, with pre-printed language on the front and back sides and designated spaces on the front for the date, the recipient's name, and a listing of photographs. The Delivery Memo dated November 18, 1996, is numbered 63888 and is addressed to Beth Thomas of Random House. That memo lists 32 photographs identified only by photographers – six by Kelly, twelve by Beidleman, one by Mackenzie, and thirteen by Fischer. The Delivery Memo dated January 22, 1997, is numbered 64216 and is also addressed to Thomas at Random House. That memo lists one photograph by Fischer, identified as "Mt. Everest-Hillary Step."

Pre-printed language on the front side of each Delivery Memo states, "The Terms and Conditions Set Forth Here and on The Reverse Side Are Deemed Incorporated Herein and Made a Part Thereof." The form sets forth various terms and conditions under three headings: (1) Terms Relative to Submission; (2) Terms As to Use, and (3) Disputes of Claims Arising Out of Submission And/or Use. The "Terms as to Use" (which appear on the reverse side of the form), include the following provision:

> . . . Upon submission of an invoice by WC&A, a license is granted to use the photographs for the use specified on the invoice and for no other purpose, unless otherwise specified. Recipient does not acquire any right, title or interest in or to any photograph, including, without limitation, any electronic reproduction or promotional rights, and will not make, authorize or permit any use of the particular photograph(s) or plate(s) made therefrom other than as specified herein.

The following sentence appears in bold: "**If you do not accept the liquidated damage provision, or the arbitration clause below, please return our Photographs to us at once**."

The following provision appears under the heading "Disputes Or Claims Arising Out of Submission And/Or Use (which also appears on the reverse side on the form):

> Any and all disputes arising out of, under or in connection with this agreement, including, without limitation, the validity, interpretation, performance and breach hereof, shall be settled by arbitration in New York City, New York, pursuant to the rules of the American Arbitration Association. Judgment upon the award rendered may be entered in the highest court of the Forum, State or Federal, having jurisdiction. This agreement, its validity and effect, shall be interpreted under and governed by the laws of the State of New York. If WC&A is caused to present claims or suit as a result of any breach of the above terms, it shall be made whole for reasonable legal fees and costs by the recipient or user herein.

(Ex. E to Pls.' Mot., at RH 001177 & RH001179.)

After reviewing these documents, Beidleman's counsel asked counsel for Random House whether Random House would consent to arbitration. On July 27, 2009, Random House's counsel advised Beidleman's counsel that Random House would oppose arbitration.

On July 28, 2009, Beidleman filed an unopposed motion for leave to file a fourth amended complaint, stating that all claims relating to Beidleman-created photographs have been resolved and the copyrights for the other photographs had been reassigned to their original owners. By order dated July 29, 2009, the Fourth Amended Complaint was accepted for filing. (Dkts. 69 & 70).

The Fourth Amended Complaint is the operative complaint. The Fourth Amended Complaint concerns six photographs – five by Fischer and one by Mackenzie. The Plaintiffs are Price and Colin Monteath ("Monteath"). Beidleman is no longer a plaintiff. Price is alleged to be the present owner of all interests in the Fischer photographs. Monteath is alleged to be the present owner, by assignment, of Mackenzie's interests in the one MacKenzie photograph.

The Plaintiffs allege that the three WC&A invoices addressed to Random House, attached as Exhibits A, B, and C to the Fourth Amended Complaint, show three photography licenses. The Plaintiffs allege that these licenses granted Random House limited rights to use the photographs listed on the invoices in hardcover and paperback editions of *Into Thin Air*. The Plaintiffs claim that Random House exceeded the licenses by printing more than 150,000 copies of the hardcover edition of *Into Thin Air* and more than 1,000,000 copies of the paperback edition of *Into Thin Air*. The Fourth Amended Complaint adds claims against two new defendants – Berryville Graphics, Inc. ("BVG") and Offset Paperback Manufacturers, Inc. ("OPM"). The Fourth Amended Complaint alleges five claims for relief: (1) copyright infringement against Random House based on its allegedly unlawful use of the Fischer and Mackenzie photographs in the hardcover edition of *Into Thin Air*; (2) copyright infringement against Random House based on its allegedly unlawful use of the Fischer and Mackenzie photographs in the paperback edition of *Into Thin Air*; (3) copyright infringement against Donnelley based on its printing of the hardcover edition of *Into Thin Air*; (4) copyright infringement against BVG based on its printing of the paperback edition of *Into Thin Air*, and (5) copyright infringement against OPM based on its printing of the paperback edition of *Into Thin Air*.

On August 4, 2009, the Plaintiffs moved pursuant 9 U.S.C. §§ 2, 3 & 4 to stay this action and compel arbitration. The Plaintiffs contend that the three invoices incorporated the terms and conditions of the Delivery Memos, including the arbitration clause. The Plaintiffs assert that Random House agreed to the arbitration clause by retaining the photographs beyond the initial inspection period, by not objecting to the arbitration clause in the Delivery Memos, and by

entering into licenses.  The Plaintiffs state that liability of the other Defendants is dependent on the Random House's liability, and therefore a stay of all further proceedings in this action is appropriate.

Random House and Donnelly (collectively "the Defendants")[3] oppose the motion, arguing  (1) Random House never consented to arbitrate, and no arbitration agreement was formed under New York law; (2) even if an arbitration agreement were found to exist, the Plaintiffs were not parties to it and have no standing to enforce it; (3) the scope of the purported arbitration clause does not include Plaintiffs' claims of copyright infringement, and (4) the right to arbitrate has been waived by litigation conduct dating to Beidleman's submission of the Second Amended Complaint on March 5, 2009.  The Defendants also state that this Court has no authority to compel arbitration in another judicial district.

On September 24, 2009, the Plaintiffs filed an action in the Southern District of New York, asking that court to compel arbitration of their claims against Random House.

A threshold issue is whether this court or an arbitrator should determine whether an arbitration agreement exists.  The Plaintiffs contend that an arbitrator should determine whether their claims are arbitrable, pointing out that the arbitration clause states, "[a]ny and all disputes arising out of, under or in connection with this agreement, including without limitation, the validity, interpretation, performance and breach hereof, shall be settled by arbitration in New York City, New York, pursuant to the rules of the American Arbitration Association."  The

---

[3]Defendants BVG and OPM have not responded to the motion.  Waivers of Service for BVG and OPM, docketed on September 21, 2009, show that their Answers to the Fourth Amended Complaint are due on November 13, 2009.  (Dkts. 77 & 78.)

Plaintiffs state that under the AAA rules, the arbitrator decides jurisdictional issues, including those relating to the existence, scope or validity of an arbitration agreement.

In *Howsam v. Dean Witter Reynolds, Inc*., 537 U.S. 79 (2002), the United States Supreme Court addressed the respective roles of courts and arbitrators when arbitration is requested under the FAA.  Whether an arbitration agreement exists falls within the category of "questions of arbitrability" that are presumptively for the court to decide  *Id.* at 84; *see also Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003) (noting that issues relating to "what kind of arbitration proceeding the parties agreed to" are presumptively for the arbitrator to decide, while issues related to "whether they agreed to arbitrate a matter," are presumptively for the court to resolve.) Accordingly, "a court may compel arbitration of a particular dispute under § 4 of the FAA only when satisfied that the 'making' of the agreement to arbitrate is not at issue." *Spahr v. Secco*, 330 F.3d 1266, 1269-70 (10th Cir. 2003) (10th Cir. 2003) (quoting *Prima Paint Corp. v. Flood & Conklin Mfg*., 388 U.S. 395, 404 (1967)).

The case presents another "gateway" issue, which is whether the Plaintiffs have waived their right to arbitrate by litigating.  That issue also requires consideration of whether waiver should be determined by the court or by an arbitrator.

Before *Howsam*, the general rule was that issues of waiver based on litigation-related conduct were matters for judicial determination.  *See Reid Burton Const., Inc. v. Carpenters Dist. Council*, 535 F.2d 598 (10th Cir. 1976) (holding that the district court was not required to submit to arbitration the question of whether the defendants should be prevented from demanding arbitration because of "evasive" and "dilatory" pleading practices before the court); *see also Ehleiter v. Grapetree Shores, Inc.,* 482 F.3d 207, 217 (3d Cir. 2007) (collecting cases

and stating, "We begin our analysis by observing that our Court has long decided questions of waiver based on litigation conduct instead of referring the issue to an arbitrator").

In *Howsam*, the Supreme Court characterized allegations of "waiver, delay, or a like defense to arbitrability" as the type of procedural questions that parties would likely expect an arbitrator to decide. 537 U.S. at 84 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)). This language could be read to require all questions of waiver to be decided by the arbitrator.

In cases decided after *Howsam*, the First, Third and Sixth Circuits have concluded that whether a party has waived the right to arbitrate by engaging in litigation conduct inconsistent with the assertion of that right is an issue for the court to determine. *See JPD, Inc. v. Chronimed Holdings, Inc.*, 539 F.3d 388 (6th Cir. 2008); *Ehleiter v. Grapetree Shores, Inc.,* 482 F.3d 207, 217 (3d Cir. 2007). *Marie v. Allied Home Mortgage Corp.*, 402 F.3d 1, 11-14 (1st Cir. 2005). The United States Court of Appeals for the Third Circuit addressed the broad language in *Howsam* as follows:

> Properly considered within the context of the entire opinion, however, we believe it becomes clear that the Court was referring only to waiver, delay, or like defenses arising from non-compliance with contractual conditions precedent to arbitration, such as the NASD time limit rule at issue in that case, and not to claims of waiver based on active litigation in court.

*Ehleiter*, 482 F.3d at 219.

The United States Court of Appeals for the Tenth Circuit has not addressed this specific issue after the Supreme Court's decision in *Howsam*. The reasoning of *Marie*, *Ehleiter* and *Chronimed Holdings* is sound. Whether the Plaintiffs, by their litigation conduct, have waived the right to arbitrate is a matter for this court to determine.

-11-

The Defendants, as the parties asserting waiver, bear the burden of proof on this issue. In this circuit, the following factors are relevant to the determination of whether a party has waived the right to arbitrate a dispute:

> (1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether the litigation machinery has been substantially invoked and the parties were well into preparation of a lawsuit before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place; and (6) whether the delay affected, misled, or prejudiced the opposing party.

*Metz v. Merill Lynch, Pierce, Fenner & Smith, Inc.*, 39 F.3d 1482, 1489 (10th Cir. 1994) (citing *Peterson v. Shearson/American Express*, 849 F.2d 464, 467-68 (10th Cir.1988) and *Reid Burton Const., Inc. v. Carpenters Dist. Council*, 614 F.2d 698, 702 (10th Cir. 1980)); *see also Hill v. Ricoh Americas Corp.*, 634 F.Supp.2d 1247, 1256 (D. Kan. 2009).

Beidleman, a resident of Aspen, Colorado, chose to proceed in this court. Through multiple amendments to the complaint, he asserted claims not only on his own behalf, but also on behalf of the other photographers. Claims of copyright infringement relating to the Fischer and Mackenzie photographs were included in Beidleman's second amended complaint, which was submitted on March 5, 2009. The serial complaints are all variations of the same basic claims. Random House has responded to four amended complaints and attended two scheduling conferences in this jurisdiction. The Plaintiffs have propounded two sets of written discovery and the Defendants have responded. The court has devoted significant attention to this case. The "litigation machinery" has been substantially invoked. These facts support the conclusion that the Plaintiffs have waived the right to arbitrate.

Attempting to avoid that result, the Plaintiffs argue that they could not have insisted on arbitration before Random House produced the Delivery Memos on July 17, 2009. The Plaintiffs state that the WC&A Delivery Memos relate to editions of *Into Thin Air* that were first included in this case in the Third Amended Complaint, filed on May 21, 2009. The Plaintiffs submitted the declaration of Woodfin Camp who states that before this litigation commenced, he diligently searched WC&A files and did not locate any delivery memoranda pertinent to the Price and Mackenzie licenses in suit. The Plaintiffs blame Random House for impeding their efforts to request arbitration, implying that Random House's counsel lied to Plaintiffs' counsel in April 2007, in response to Mr. Seidman's inquiries about whether Random House's files included WC&A delivery memoranda.

The Plaintiffs ignore the fact that the arbitration clause appears on delivery memos generated and sent by the *Plaintiffs' agent*, WC&A. WC&A apparently did not retain copies of those documents and did not provide them to its photographer clients. If Beidleman was unable to locate copies of documents showing the existence of the purported arbitration agreement(s), and therefore initiated and continued litigation rather than requesting arbitration, that problem was created by WC&A's faulty record keeping and client communication practices. The Plaintiffs must accept responsibility for the conduct of their agent. There is no basis for this court to find that counsel for Random House intentionally deceived Plaintiffs' counsel about the existence of delivery memoranda. The pre-filing communications appear to have concerned only a specific memo that the Plaintiffs' counsel believed had been sent to Villard. (*See* Defs.' Ex. L.)

Even if waiver were not an issue, the Plaintiffs' motion fails because they have not carried their burden of showing the existence of an enforceable arbitration agreement.

"A 'standard similar to that governing motions for summary judgment' controls motions to compel arbitration under the FAA." *Cornell v. Harmony Homes,* Inc., 2007 WL 38132 at * 3 (D. Colo. Jan. 4, 2007) (quoting *Stein v. Burt-Kani One, LLC*, 396 F.Supp.2d 1211, 1212 (D.Colo.2005)). The moving party bears the burden of presenting evidence sufficient to demonstrate the existence of an enforceable arbitration agreement. *Stein*, 396 F.Supp.2d at 1212.

Courts generally apply state-law principles governing contract formation to determine whether a party has agreed to arbitrate a dispute. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Hardin v. First Cash Fin. Servs., Inc*., 465 F.3d 470, 475 (10th Cir.2006). New York law governs the issue of whether Random House agreed to the arbitration clause in the Delivery Memos.

The parties have addressed the contract formation issue with reference to Section 2-207 of the Uniform Commercial Code. That section provides as follows:

> (1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.
>
> (2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:
>
> (a) the offer expressly limits acceptance to the terms of the offer;
>
> (b) they materially alter it; or
>
> (c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

> (3) Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this Act.

N.Y. U.C.C. § 2-207.

The Delivery Memos are not offers for sale. They do not address significant terms of any photography license, such as price and the scope of permission.

The Plaintiffs have not provided any affidavits or other evidence describing the progression of communications between WC&A and Random House that resulted in the claimed photography licenses. The Plaintiffs simply argue that Random House accepted the arbitration clause by entering into photography licenses. The Plaintiffs assert that under Section 2-207(3), the parties' conduct shows the existence of license agreements that included an agreement to arbitrate. That argument is based on the contention that the license terms reflected on the invoices (Exhibits A, B, and C to the Fourth Amended Complaint) incorporated the terms and conditions of the Delivery Memos. The invoices do not include any arbitration agreement.

Under New York law, a contract may incorporate by reference an arbitration clause found in another document. *See Aceros Prefabricados, S.A. v. TradeArbed, Inc*., 282 F.3d 92, 97-98 (2d Cir. 2002)("Indeed, we have specifically found that parties were bound to arbitrate under arbitration clauses they never signed, where those clauses were contained in other documents that were incorporated by reference.")(citing *Ronan Assocs. v. Local 94-94A-94B, Int'l Union of Operating Eng'rs*, 24 F.3d 447, 449 (2d Cir.1994) and *Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela*, 991 F.2d 42, 47 (2d Cir.1993)). Incorporation by

reference requires that the underlying contract clearly refer to the document alleged to be incorporated.

All three invoices refer to Delivery Memo Number 63888, but the significance of that reference is unclear.  The phrase "SEE TERMS AND CONDITIONS" at the top of the invoices could be read as a reference to the Terms and Conditions on the bottom of the invoices, or as a reference to the terms and conditions of the Delivery Memo.  The Plaintiffs also rely on the arbitration clause in Delivery Memo Number 64216, but none of the invoices refer to that Delivery Memo.  The invoices do not explicitly incorporate the terms and conditions of the Delivery Memos.

The arbitration clause in the Delivery Memos covers "[a]ny and all disputes arising out of, under or in connection with *this agreement*, . . . " (emphasis added.)  That language does not clearly encompass disputes arising out of subsequently negotiated license terms.

The documentary evidence submitted by the Plaintiffs does not support a finding that the terms of any photography license included the arbitration clause in the Delivery Memos.  Under New York law, "a party will not be compelled to arbitrate and, thereby, to surrender the right to resort to the courts, absent 'evidence which affirmatively establishes that the parties expressly agreed to arbitrate their disputes' . . . The agreement must be clear, explicit and unequivocal . . . and must not depend on implication and subtlety." *Marek v. Alexander Lauger & Son, Inc.*, 257 A.D.2d 363 (N.Y. 1st Dep't 1999)(quoting *Matter of Waldron* (*Goddess*), 61 N.Y.2d 181, 183-184, 461 N.E.2d 273, 274 (1984) (citations omitted)).  The evidence submitted by the Plaintiffs does not meet that standard.

Accordingly, it is

ORDERED that the Plaintiffs' motion to stay and compel arbitration is denied.

Dated: October 16, 2009

BY THE COURT:

s/Richard P. Matsch

_____
Richard P. Matsch, Senior District Judge